## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | |
|---|---|
| **CYNTHIA JACKSON**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**PACIFICA CARE PLLC**, a Florida limited liability company,<br><br>Defendant. | CIVIL ACTION<br><br>Case No. 2:21-cv-214<br><br>Judge:<br><br>Mag. Judge: |

### COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COMES** the Plaintiff, **CYNTHIA JACKSON** ("**JACKSON**" or "Plaintiff") by and through undersigned counsel, and states the following for her Complaint:

### CAUSES OF ACTION

1. This is an action brought under the federal False Claims Act (FCA), Florida's Private Whistleblower Act (FWA), and the federal Fair Labor Standards Act (FLSA) for (1) retaliation in violation of the FCA, (2) retaliation in violation of the FWA, and (3) unpaid overtime in violation of the FLSA.

### PARTIES

2. The Plaintiff, **CYNTHIA JACKSON** ("**JACKSON**") is an individual and a resident of Florida who at all material times provided services for the

1

Defendant in Charlotte County, Florida and at all times had enterprise and individual coverage under the FLSA during her employment with the Defendant. At all material times, **JACKSON** was employed by the Defendant as an office manager. **JACKSON** was involved in the flow of interstate commerce by, *inter alia*, by processing out-of-state financial transactions, including billing and receiving funds to/from Medicare, and communicating with seasonal visitors located outside Florida. **JACKSON** performed work primarily in Charlotte County, Florida, which is within the Middle District of Florida, during the events giving rise to this case. **JACKSON** was an employee within the contemplation of 29 U.S.C. 203(e)(1). Thus, pursuant to 28 U.S.C. 1391(b), venue for this action lies in the Middle District of Florida.

3. The Defendant, **PACIFICA CARE PLLC** ("**PACIFICA**") is a Florida limited liability company. **PACIFICA** has a principal place of business in Duval County, Florida, but it employed **JACKSON** in Charlotte County, Florida. **PACIFICA** has gross annual sales well in excess of $500,000.00 per year and is engaged in interstate commerce. Their employees, including **JACKSON**, are engaged in interstate commerce as they process out-of-state financial transactions, including billing and receiving funds to/from Medicare, and communicate with and treat seasonal visitors located outside Florida. **PACIFICA** had the authority to hire, fire, assign work, withhold work and affect the terms and conditions of persons like **JACKSON**. **PACIFICA** supervised and controlled **JACKSON**'s work

schedules and conditions of employment, in addition to determining the rate and method of payment for **JACKSON**. **PACIFICA** maintains employment records of **JACKSON** and was her employer.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of this matter under 28 U.S.C. §1331, 1343(4), 2201 and 2202 and pursuant to the Fair Labor Standards Act (FLSA") 29 U.S.C. §§216(b) and 217. The jurisdiction of this Court is invoked to secure the protection and redress of the deprivation of rights secured by the FCA and FLSA.

5. This Court has supplemental jurisdiction over **JACKSON**'s state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the United States District Court for the Middle District of Florida because the Plaintiff resides in, and the Defendant conducts business in, and some or all of the events giving rise to Plaintiff's claims occurred in Charlotte County, Florida, which is within the Middle District of Florida. Venue is proper in the Fort Myers Division under Local Rule 1.02(b)(5) since the action accrued primarily in Charlotte County, which is within the Fort Myers Division.

## GENERAL ALLEGATIONS

7. **JACKSON** began her employment with the Defendants on July 1, 2019.

8. **JACKSON** performed her assigned duties in a professional manner and was very well qualified for her position.

### Retaliation in Violation of the FCA and FWA

9. Immediately after beginning her employment **JACKSON** questioned Gabe Treesh, (Defendant's co-owner) regarding Medicare billing.

10. **JACKSON** was informed that the Defendant was not yet authorized to bill Medicare and all submissions to Medicare were on hold.

11. In addition, **JACKSON** informed Mr. Treesh that the Defendant was not in compliance with HIPAA law requirements.

12. She informed him that the company was not using a secure server for patients information and that Flock, the "app" they were using for inter office communications was also not secure.

13. **JACKSON** also addressed the fact that Dr. Tait was Skyping and using "Whatsapp" for appointments, neither site was secure and the office was not set up for telemedicine and that thus the Defendant could not legally bill using these unsecure apps.

14. In addition, **JACKSON** inquired on numerous occasions regarding the insurance contracts for billing purposes.

15. Mr. Treesh informed **JACKSON** that the practice was credentialed and not each provider. **JACKSON** informed Mr. Treesh that its' practice was illegal to see patients and bill Medicare on days that Dr. Tait was not in the office.

16. That same week **JACKSON** spoke to Dr. Donna Treesh regarding biohazard and clia for drug screenings.

17. Dr. Treesh assured **JACKSON** that the drug screens they purchased were clia waived. However, they still did not have biohazard at the Punta Gorda location.

18. On July 29, 2019, **JACKSON** met with Gabe Treesh at the Punta Gorda office and again addressed the Defendant's noncompliant Medicare billing and HIPAA noncompliance.

19. Mr. Treesh advised **JACKSON** to continue to schedule Medicare patients, that they had up to a year to bill.

20. **JACKSON** also informed Mr. Treesh that United Healthcare patients could only be billed if they were seen by a credentialed physician and could not be billed for seeing a nurse practitioner or therapist. Mr. Treesh advised **JACKSON** to continue seeing the patients as scheduled.

21. That same week **JACKSON** met with Donna and Gabe Treesh and objected to the Defendant not having proper paperwork for patients, that none of the patients were signing for the psychotropic medications, and that none of the patients had a suboxone agreement on file as required by law.

22. On August 12, 2019, **JACKSON** again spoke to Donna and Gabe Treesh regarding the numerous violations. In addition, she informed them that they were illegally operating the facility they had opened next door, and that

**JACKSON** had nothing from the county regarding licensing and the address was not added to any of the contracts with the insurance carriers for purposes of billing, meaning she could not bill.

23. On August 21, 2019, **JACKSON** again spoke to Dr. Treesh regarding United HealthCare integrity department and that the office was billing without diagnosis codes.

24. On August 22, 2019, **JACKSON** again addressed the issues of biohazard and Clia with Dr. Treesh, who stated that Jacksonville has biohazard, but Punta Gorda does not.

25. On August 23, 2019, **JACKSON** again addressed illegal billing issues with Gabe Treesh, who responded that the billing was fine and to keep billing. He also instructed **JACKSON** not to discuss office problems with Dr. Treesh.

26. On August 26, 2019, Donna Treesh instructed **JACKSON** that she was no longer to go through Gabe and that everything was to go through her.

27. Between August 28 and August 30, 2019 **JACKSON** objected to the illegal billing to both Dr. Donna Treesh and Dr. Tait, she informed them regarding the Medicare denials and Dr. Tait being deactivated from Medicare since May 16, 2019. In response Dr. Treesh sent a text message that she let a nurse practitioner practice without a license for three (3) months and was still paid for the services.

28. During the week of September 1, 2019, **JACKSON** was on the telephone with the providers regarding billing numbers. In addition, during this

same week, **JACKSON** had several telephone calls with Dr. Treesh and Natasha, the individual in charge of billing regarding the billing numbers and the illegal Medicare billing.

29. On September 4, 2019, Dr. Treesh, indicated that she was having some home issues with her husband Gabe and stated she was filing restraining order against him.

30. On September 9, 2019, **JACKSON** spoke to Dr. Treesh regarding a letter Dr. Treesh received from Medicare. Dr. Treesh indicated that everything was fine and to continue to see Medicare patients. Natasha then gave notice that she would not continue to work for a practice that is operating illegally as the Defendant was.

31. On September 10, 2019, Dr. Tait and **JACKSON** contacted Medicare and were advised that Dr. Tait was deactivated from Medicare and that a request was submitted to have Dr. Tait reactivated individually, not Pacifica Care.

32. On September 11, 2019, Dr. Tait sent a letter to her current Medicare patients advising them that she would no longer be seeing them since she was not a Medicare provider.

33. On September 17, 2019, Dr. Treesh sent **JACKSON** an email requesting that she sign a non-disclosure agreement. **JACKSON** informed Dr. Treesh that she wanted her attorney to review the agreement prior to signing same

since it appeared to be an attempt to silence her from voicing objections to the Defendant's illegal billing of Medicare and other violations of the law.

34. On September 20, 2019, Donna and Gabe Treesh met with **JACKSON** in the Punta Gorda office and informed her that they could no longer afford her services and requested that she sign a separation agreement.

35. **JACKSON** declined to sign the separation agreement.

36. Accordingly, in retaliation for her complaints regarding the HIPAA violations, failure to have and maintain a secure server, failure to have patients execute the required paperwork in order to obtain psychotropic medications, Clia for drug screenings, biohazard and use of unsecure apps for telemedicine appointments and improper and illegal Medicare billing and refusal to participate in illegal activities, **JACKSON**'s employment was terminated on September 20, 2019.

**Violations of the FLSA**

37. **JACKSON** was purportedly paid on a salary basis but was actually paid at an hourly rate because the Defendant refused to pay her for a full day's work when she only worked part of a day (thus reducing her pay by the hours of work missed), and **JACKSON** was thus non-exempt.

38. **JACKSON**'s regular daily duties often began as early as 7:00 A.M. and could, and would, often end as late as 7:00 P.M., and also included working some weekends.

39. The Defendant demanded that **JACKSON** be available between those hours and **JACKSON** did work for the Defendants during that time.

40. **JACKSON** was required by the Defendants to work at least 65 or more hours per week and often more, for almost each week of her employment (except during scheduled vacations), but the Defendant failed to pay **JACKSON** overtime wages at time and a half.

41. **JACKSON** was not FLSA-exempt but rather a non-exempt employee whom the Defendant required or permitted to work off-the-clock in violation of the FLSA because **JACKSON** performed work for the benefit of the Defendant for which she was not compensated. To the extent that such work is performed during a work week in which **JACKSON** has, or would have, worked in excess of forty (40) hours per week, such practice violates the overtime pay provisions of the FLSA by virtue of the Defendant's failure to pay compensation at a rate of one and one-half (1 and 1/2) times **JACKSON**'s regular hourly wage rate.

42. The Defendants failed to act in good faith under the reasonable belief it had complied with the FLSA.

43. **JACKSON** is entitled to liquidated damages because the Defendant acted willfully or with at least a reckless disregard as to the legality of its pay practices in regard to **JACKSON**.

## COUNT I – VIOLATION OF VIOLATION OF 31 U.S.C. § 3730(h): RETALIATION

44. Plaintiff incorporates by reference Paragraphs 1-36 of this Complaint as though fully set forth below.

45. The Plaintiff, an employee, believed in good faith, and a reasonable employee in the same or similar circumstances would also believe, that Defendant was committing a fraud upon federal government agencies and other private entities.

46. Defendant was aware of Plaintiff's disclosure of its alleged misdeeds to her supervisor and administrators.

47. Immediately thereafter, Plaintiff began to receive unsatisfactory performance reviews, reprimands, a hostile work environment, and adverse employment action.

48. Immediately after objecting to Defendant's misdeeds, Plaintiff began to be subjected to retaliation.

49. Pursuant to 31 U.S.C. § 3730(h) of the False Claims Act (hereinafter "FCA"), any employee who is discharged, demoted, suspended, threatened, harassed and otherwise discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done under the FCA is entitled to all relief necessary to make the employee whole.

50. The purpose of the FCA, as explained in the Senate report accompanying the 1986 amendments to the FCA, states that Congress added a retaliation provision to the FCA "to halt companies… from using the threat of economic retaliation to silence 'whistleblowers'" and to "assure those who may be considering exposing fraud that they are legally protected from retaliatory acts." S. Rep. No. 99-345, at 34 (1986), U.S. Code Cong. & Admin News 1986, at 5266, 5299.

51. Defendant began its negative employment actions against Plaintiff and ultimately did discharge her from her position for reasons contrary to public policy, as set out in 31 U.S.C. § 3730(h) and without just cause.

52. Defendant, in discharging, suspending, demoting, threatening, disciplining and harassing Plaintiff in and from her employment, retaliated and discriminated against her because of complaints and concerns raised by her to Defendant.

53. The acts of Defendant in demoting, suspending, threatening, disciplining, harassing, discriminating, and retaliating against Plaintiff, including but not limited to the wrongful discharge of employment, adverse employment actions, denial of true and correct performance appraisals, demotion and termination of Plaintiff by Defendant violated the provisions of 31 U.S.C. § 3730(h).

54. Following Plaintiff's objection to Defendant's misappropriation and illegal retention of federal funds, Defendant has discriminated, suspended,

demoted, threatened, disciplined, harassed and retaliated against Plaintiff for lawful conduct protected under the FCA.

55. Defendant has terminated, discharged, suspended, threatened, disciplined, harassed, and discriminated against Plaintiff in her employment in violation of 31 U.S.C. § 3730(h).

56. Defendant has discriminated and retaliated against Plaintiff for lawful and protected conduct in connection with her investigation for, initiation of, testimony, potential testimony concerning, and assistance in an action filed or to be filed under the FCA, 31 U.S.C. § 3729 et seq.

57. Plaintiff is entitled to all relief necessary to make her whole, including reinstatement with the same seniority status that she would have had but for the discrimination and two times the amount of back pay.

58. Plaintiff, pursuant to 31 U.S.C. § 3730(h), is entitled to litigation costs and all reasonable attorneys' fees incurred in connection with this action.

59. Plaintiff's conduct, including but not limited to investigating Defendant's misappropriation and retention of federal funds, and also raising complaints concerning same and bearing witness to violations of same, potential testimony concerning, potential initiation of and assistance in an action filed or potentially to be filed pertaining to the FCA, is all protected conduct under the FCA.

60. Defendant knew that Plaintiff was engaged in protected conduct as referenced herein.

61. Defendant discharged, terminated, demoted, suspended, threatened, disciplined and harassed Plaintiff from her employment and after her employment, and otherwise discriminated against her because of her protected conduct. In fact, after she was terminated and communicated her intent to pursue whistleblower action and to put a stop to the Defendant's illegal practices, the Defendant suddenly threatened to report her to the State Attorney's Office.

62. As a direct and proximate result of the violations of 31 U.S.C. § 3730(h) as referenced and cited herein, Plaintiff has lost all of the benefits and privileges of her employments and has been substantially and significantly injured in her career path that was anticipated from her employment.

63. As a direct and proximate result of the violations of 31 U.S.C. § 3730(h) as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, Plaintiff is entitled to all relief necessary to make her whole.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

    i.    Injunctive relief directing this Defendant to cease and desist from all retaliation against employees who engage in speech protected by the FCA;

    ii.    Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had she maintained her position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

    iii.    Double back pay;

    iv.    Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

    v.    Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of the Defendant's actions;

    vi.    Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statutes cited above;

    vii.    Reasonable attorney's fees plus costs;

    viii.    Compensatory damages, and;

    ix.    Such other relief as this Court shall deem appropriate.

## **COUNT II –VIOLATION OF FLORIDA STATUTE 448.102: FLORIDA'S PRIVATE WHISTLEBLOWER ACT**

64. Plaintiff incorporates by reference Paragraphs 1-36 of this Complaint as though fully set forth below.

65. Plaintiff was an employee of the Defendant, a private company.

66. At all material times, Plaintiff was to be protected from negative employment action by Florida Statute 448.102(1)-(3), commonly known as Florida's "whistleblower statute," which in relevant part provides:

> "An employer may not take any retaliatory personnel action against an employee because the employee has:
>
> (1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice;
>
> (2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer, and;
>
> (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."

67. Plaintiff did engage in statutorily protected activity by her objections, written complaints, and refusal to participate in, the Defendant's illegal practices.

68. Immediately after engaging in statutorily protected activity, Plaintiff suffered negative employment action, her termination, which is a direct result of this statutorily protected activity.

69. Plaintiff's termination and her engaging in statutorily protected activity are causally related.

70. The Defendant knew that Plaintiff was engaged in protected conduct as referenced herein.

71. The Defendant discharged, terminated and retaliated against Plaintiff from her employment and after her employment, and otherwise retaliated against her because of her protected conduct. In fact, after she was terminated and communicated her intent to pursue whistleblower action and to put a stop to the Defendant's illegal practices, the Defendant suddenly threatened to report her to the State Attorney's Office.

72. As a direct and proximate result of the violations of F.S. § 448.102, as referenced and cited herein, Plaintiff has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path that was anticipated from her employment.

73. As a direct and proximate result of the violations of F.S. § 448.102, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against him, Plaintiff is entitled to all relief necessary to make him whole.

**WHEREFORE,** Plaintiff demands damages against Defendant for violation of Florida's Private Sector Whistle-blower's Act (Section 448.102, Fla. Stat.), including but not limited to all relief available under Section 448.103, Fla. Stat., such as:

(a) an injunction restraining continued violation of this act,

(b) reinstatement of the employee to the same position held before the retaliatory personnel action, or to an equivalent position,

(c) reinstatement of full fringe benefits and seniority rights,

(d) compensation for lost wages, benefits, and other remuneration,

(e) any other compensatory damages allowable at law,

(f) attorney's fees, court costs and expenses, and

(g) such other relief this Court deems just and proper.

## COUNT III: VIOLATION OF THE FLSA- UNPAID OVERTIME

74. The Plaintiff hereby incorporate Paragraphs 1-8 and 37-43 in this Count as though fully set forth herein.

75. **JACKSON** was a covered, non-exempt employee under the FLSA at all times during her employment with the Defendants.

76. The Defendants were required by the FLSA to pay **JACKSON** at least time and one-half for all hours worked by **JACKSON** in excess of 40 hours per week.

77. The Defendants had operational control over all aspects of **JACKSON**'s day-to-day functions during her employment, including compensation.

78. The Defendants were **JACKSON**'s "employer" and are liable for violations of the FLSA in this case.

79. The Defendants violated the FLSA by failing to pay **JACKSON** at least time and one-half for all hours worked over 40 per week.

80. The Defendants have willfully violated the FLSA in refusing to pay **JACKSON** proper overtime for all hours worked over 40 per week.

81. As a result of the foregoing, **JACKSON** has suffered damages of lost wages.

82. The Defendants are the proximate cause of **JACKSON**'s damages.

**WHEREFORE,** the Plaintiff prays that this Honorable Court enter a Judgment in her favor and against the Defendants for an amount consistent with evidence, together with liquidated damages, the costs of litigation, interest, and reasonable attorneys' fees.

## DEMAND FOR JURY TRIAL

**NOW COMES** the Plaintiff, **CYNTHIA JACKSON**, by and through her undersigned attorney, and demands a jury trial under Federal Rule of Civil Procedure 38 on all issues triable of right by a jury in this action.

Respectfully submitted,

Dated: March 12, 2021    **/s/ Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Trial Counsel for Plaintiff
YORMAK EMPLOYMENT & DISABILITY LAW
9990 Coconut Road
Bonita Springs, Florida 34135
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com